Helena JOHANNESSEN, as Administratrix of the Estate of Ole R. Johannessen, deceased, Appellant,

v.

GULF TRADING & TRANSPORTATION COMPANY and Blackships, Inc., Appellees.

No. 109, Docket 80-7370.

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1980.

Decided Oct. 27, 1980.

**654**

George J. Duffy, Hoboken, N. J. (Baker, Garber, Duffy & Baker, Hoboken, N. J., of counsel), for appellant.

William M. Kimball, New York City (Burlingham, Underwood & Lord, New York City, of counsel), for appellees.

Before KAUFMAN and KEARSE, Circuit Judges, and BRIEANT, District Judge.[*]

BRIEANT, District Judge.

On December 18, 1975, the SS Gulf Solar was lifting a cargo of gasoline alongside a pier at North Kenai, Alaska (port of Nikiski). On that date, while serving as Master of the Gulf Solar, Captain Ole R. Johannessen gave up his life in the highest tradition of the sea because he was trying to find out why an ice-blocked valve had been permitted to delay loading for more than two hours. A seaman and the Second Mate perished with him.

Appellant, his widow and personal representative, sued appellee Gulf Trading and Transportation Company ("Gulf"), the operator of the vessel, under the Jones Act as amended, 46 U.S.C. § 688, for negligence and sued appellee Blackships, Inc., the vessel owner, for breach of the warranty of seaworthiness. She seeks to review a judgment entered upon a directed verdict by the Court during a jury trial after plaintiff had rested her case.[1]

---

[*] Honorable Charles L. Brieant, United States District Court for the Southern District of New York, sitting by designation.

[1] Nominally, the appeal was taken from an order of the district court "denying plaintiffs' motion to amend the judgment, and for a new

Viewed most favorably to appellant, the proof at trial showed that Captain Johannessen entered a cargo tank at approximately 8:15 P.M. to observe repairs to an ice–choked fill valve which had obstructed loading of the tank with gasoline since about 6:00 P.M. Although informed that the tank was "very gassy," that is, that it was filled with deadly gasoline vapor, decedent declined to wear a fresh air breathing apparatus (hereinafter "airmask"), saying "I am just going down to look and observe and I am coming right back". While walking along a twelve inch cargo line in the tank, the Master collapsed and fell down into about ten inches of gasoline in the bottom of the tank. Unsuccessful efforts to rescue him, and to save A/B Burnette, who was also in the tank, ultimately resulted in the Captain's death from asphyxiation. Burnette and Pitney, a rescuer, also lost their lives from the same cause. They were not recovered from the tank until after midnight.

■ That a jury should conclude decedent was himself negligent appears clear. The Coast Guard found that his actions "were improper in wilfully entering a tank containing high concentrations of petroleum vapors without a supplemental breathing apparatus." He had been warned of the vapors.and urged to wear an airmask. It is true that a man had been working in the tank earlier that day without such apparatus. The ambient temperature was 13° F., which limits volatility of the vapors to some extent. The Master considered the necessity for an airmask and made a judgment not to use one in light of the short period of time he intended to be in the tank. Contributory negligence and assumption of the risk are not defenses which bar recovery by a seaman in a Jones Act case. Rather, a comparative negligence standard applies. *Jacob v. New York City*, 315 U.S. 752, 755, 62 S.Ct. 854, 855, 86 L.Ed. 1166 (1942); *Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939). The issue, therefore, is whether the Captain's error of judgment, negligence though it might be, was the sole cause of his death.

■■ We think a jury may find some concurrent negligence not attributable to the Master, but to his fellow servants.[2] Without limiting the points which may be urged on retrial, we note that the rescue operations produced utter chaos on deck. An extra airmask should have been at the hatch location to use in the foreseeable event of collapse of a person, or need for another to enter the tank to assist or rescue those who were working below, or at least a jury could so find.[3] Had Johannessen been

---

trial." This was improper; however, in the interests of justice we treat the appeal as having been taken from the judgment itself, entered by the Clerk upon the oral direction of the Court at trial after plaintiff had rested. *See generally*, 6A Moore, Federal Practice ' 59.-15[1] (2d ed. 1979).

**2.** The Jones Act as amended, 46 U.S.C. § 688, is so familiar that it need not be quoted in full. It provides, *inter alia*, that in an action brought thereunder "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." *See Ferguson v. Moore–McCormack Lines, Inc.*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957). Among such statutes is 45 U.S.C. § 54 which provides in relevant part that "such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." Although the master of a vessel has total charge of all operations, the negligence of his subordinate is not imputed to him for purposes of a Jones Act claim.

**3.** At oral argument, appellees, while they did not abandon their reliance below on the "primary duty" rule adopted by the trial Court, which holds a seaman cannot recover for the injuries caused solely by his own negligent breach of a duty owed the employer under the terms of his employment [*see Walker v. Lykes Bros. S.S. Corp.*, 193 F.2d 772 (2d Cir. 1952)], stated they would "prefer to rest their argument" on a contention of unforeseeability. We think a jury could find that it was eminently foreseeable that the additional airmask, located elsewhere on the vessel, might be needed immediately at the location of the tank with the ice–blocked valve. We are constrained to note that *Palsgraf* concepts of foreseeability [*Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)] are inapplicable to claims within our admiralty and maritime jurisdiction.

rescued promptly and effectively, he might have lived; it is analogous to a drowning where prompt resuscitation will save a life.

The trial Court was beguiled by the concept that "the more negligent you claim that the ship is, the more negligent the captain himself was." Of course, a ship can only be negligent through her personnel. Accepting, *arguendo* the Court's view based on the total "authority" of the Master over all activity on the vessel "from the moment he gets on a ship until the moment he gets off the ship," and recognizing his accountability and primary, non–delegable duty to see to the safety of the ship, her cargo and crew, a jury could find that Captain Johannessen's "authority," his primary duty and his negligence all came to an end at the instant when he passed out from the gasoline fumes. An unconscious person cannot be held for a failure to exercise reasonable care in directing his own rescue, nor should he be charged with the apparent negligence of the ship's personnel who failed to get him out alive, and lost Burnette and Pitney in the bargain. Arguably, not all of the negligence which caused this loss of life is attributable to the decedent. A jury should allocate the proportionate fault. *Avena v. Clauss & Co.*, 504 F.2d 469 (2d Cir. 1974).

The reasoning in support of the ruling which took these issues from the jury is found in the trial Court's unreported memorandum decision of April 11, 1980, denying appellant's motion for a new trial. The Court held that "the directed verdict was based on the finding that plaintiff had not introduced evidence sufficient to meet her burden of proving, *prima facie*, that the defendants were negligent or that their negligence caused Captain Johannessen's death."

This finding of fact, if it be read to imply that the evidence was so thin that on a judicial appraisal, the conclusion *must* be drawn that negligence of the employer could have played no part in plaintiff's death, is clearly erroneous.

■ There is no workmen's compensation act for mariners or railroaders. For them, compensation depends on a jury finding of negligence. It is well established that the role of the jury is significantly greater in Jones Act and FELA cases than in common law negligence actions. The right of the jury to pass upon the question of fault and causation must be most liberally viewed. *See Eggert v. Norfolk & W. Ry. Co.*, 538 F.2d 509, 511 (2d Cir. 1976), and cases therein cited. Indeed, "trial by jury is part of the remedy." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962). As was held in *Ferguson v. Moore–McCormack Lines*, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957):

> Since the standard of liability under the Jones Act is that established by Congress under the Federal Employers' Liability Act, what we said in *Rogers v. Missouri Pacific R. Co.*, ante [352 U.S.] p. 500, 77 S.Ct. 443 [1 L.Ed.2d 493] decided this day, is relevant here:
>
> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

Accordingly, we reverse and remand for a jury trial of the negligence claim against *Gulf*.

■ We now consider the unseaworthiness claim against Blackships. The trial Judge in denying the motion for a new trial of this issue held that he had "found as a fact" on the motion for a directed verdict that plaintiff had not established that the ice–obstructed valve was a proximate cause of the death. This fact–finding process was

See Petition of Kinsman Transit Co., 338 F.2d 708, 721 (2d Cir. 1964), cert. denied sub nom. Continental Grain Co. v. City of Buffalo, 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965). Here, as in Kinsman Transit, if it was foreseeable that failure to have an airmask available to permit prompt assistance to those already working in the tank could result in injury to them, a Captain engaged in a "wilful" inspection trip was also within the "area of hazard."

for the jury, and we find the evidence of causation sufficient to take the claim to the jury. That the ice blocking the valve constituted transitory *Usner* unseaworthiness [4] seems to have been perceived by the trial Court and is not denied in appellant's brief. Verdicts based on unseaworthiness have been sustained in cases where injury resulted to a seaman from his own negligent efforts to crack a stuck valve. *See e. g., Lee v. Pacific Far East Line, Inc.*, 566 F.2d 65 (9th Cir. 1977). On this claim also, the jury should determine causation and, if necessary, apportion the relative fault.[5] We reverse and remand for a jury trial of the unseaworthiness claim against Blackships.

---

**4.** *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498–99, 91 S.Ct. 514, 516–17, 27 L.Ed.2d 562 (1971).

**5.** We believe that a jury may, but need not, find that the unseaworthy valve was a direct but concurrent cause of Captain Johannessen's death, along with his own negligence, and possibly the negligence of his fellow servants. *See generally Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100, 64 S.Ct. 455, 457, 88 L.Ed. 561 (1944); *Davis v. Hill Engineering, Inc.*, 549 F.2d

314, 331 (5th Cir. 1977); *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975); *Peymann v. Perini Corp.*, 507 F.2d 1318, 1324 (1st Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); *Farnarjian v. American Export Isbrandtsen Lines, Inc.*, 474 F.2d 361, 363–64 (2d Cir. 1973); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670, 681 (2d Cir. 1971); *Milos v. Sea–Land Serv., Inc.*, 478 F.Supp. 1019, 1023 (S.D.N.Y.1979).