**Wayne T. OXLEY and Ruth A. Oxley,**
**Plaintiffs–Appellants,**

v.

**The CITY OF NEW YORK,**
**Defendant–Appellee.**

**No. 364, Docket 90–7555.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1990.

Decided Jan. 11, 1991.

David Jaroslawicz, New York City (Jaroslawicz & Jaros, New York City, of counsel), for plaintiffs-appellants.

Linda H. Young, New York City (Victor A. Kovner, Ellen B. Fishman, Corp. Counsel of the City of New York, of counsel), for defendant-appellee.

Before CARDAMONE and MINER, Circuit Judges, POLLACK, Senior District Judge.*

MINER, Circuit Judge:

Plaintiffs-appellants Wayne T. Oxley ("Oxley") and Ruth A. Oxley appeal from a summary judgment entered in the United States District Court for the Southern District of New York (Owen, *J.*) dismissing their complaint against defendant-appellee City of New York. Wayne Oxley brought this action to recover damages for injuries he sustained in an accident that occurred while he was serving as an engineer aboard a vessel owned by the City of New York known as Police Department Launch No. 2. Ruth Oxley, his wife, joined in the action to seek damages for loss of consortium. Alleged in the complaint were claims of negligence, pleaded under the Jones Act, 46

U.S.C. § 688 (1988), and unseaworthiness, pleaded under the general maritime law.

Oxley contends that he raised triable issues of fact as to both negligence and unseaworthiness. In the district court he asserted that the Launch was unseaworthy because the vessel was not provided with sufficient lighting, was not furnished with adequate deck de-icing equipment or a supply of sand for traction on the deck and was not equipped with a ladder or gangplank for use in boarding. In his claim under the Jones Act, Oxley alleged that the City was negligent in allowing the foregoing conditions to exist and in maintaining a dock with a broken cleat.

The court considered each of the conditions described and concluded that none raised any triable issues as to unseaworthiness or negligence under the circumstances. We disagree, reverse the summary judgment and remand for trial.

## BACKGROUND

The accident in which Oxley was injured occurred on March 20, 1986, while Oxley was engaged in the performance of his duties as engineer aboard Launch No. 2. The Launch, a 52–foot vessel, was one regularly used as a "spare" for police patrols. Oxley had been assigned to the Police Department Harbor Unit in 1982 and had served as a police officer since 1968. On the day of the accident, his responsibilities as engineer for Launch No. 2 were to check the deck lights, engines, pumps, batteries, oil, transmission levels, fuel, and the generator to ensure that everything was in working order. Oxley also checked the underdeck heating system, a makeshift de-icing system consisting of water pipes through which hot water and antifreeze flowed. Oxley reported to the Launch pilot that the vessel's equipment was working properly.

At around 11:00 p.m., the Launch received a radio call to transport corrections officers from Hart Island to City Island

* Hon. Milton J. Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

because bad weather prevented the corrections officers from using the small boat that ordinarily transported them to and from Hart Island. The weather conditions were hazardous, with strong winds, below freezing temperatures and some mixed rain and snow. Official weather reports documented a temperature of 22 degrees Fahrenheit at 11:00 p.m.

On the way to Hart Island, Oxley noticed that ice was forming on the deck. The potential methods for dealing with icy conditions on the Launch's deck were the under-deck heating system and the use of salt or sand. Oxley testified at his deposition that the under-deck heaters were not melting the ice, even though the heaters appeared to be working properly at the time. No supply of salt or sand was available that evening.

The crew encountered some difficulty in docking at Hart Island because of the inclement weather. According to the Launch pilot, docking was further complicated because one of the cleats on the dock was partially broken, making it difficult to work the line so as to maintain the Police Launch alongside the dock. Oxley testified that the corrections officer had to jump from the dock to the Launch because there was a two-to-three foot gap between the dock and the Launch and no gangplank to bridge that gap. As a result, the officer slipped on the ice that had formed on the deck and fell on Oxley, causing Oxley to sustain a knee injury. This action against the City, commenced on August 12, 1986, was occasioned by that injury.

In granting summary judgment on the basis of Oxley's deposition and various affidavits submitted on behalf of the City, the district court examined Oxley's contentions regarding the causes of the accident. As to the lack of sand or other abrasive substance to combat icing on the deck, the court credited the affidavit of the officer in charge of Harbor Unit safety procedures. According to that officer, the application of sand or salt would be unsafe, and the court concluded that plaintiff had produced no "evidence to indicate that a supply of sand is necessary to make a ship seaworthy under icy conditions." The court found that the broken cleat on the dock "made no difference" and that the light on board was sufficient. It concluded that "neither the lighting nor the broken cleat could have had anything to do with the accident." With regard to the under-deck heaters, the court faulted plaintiff for failure to produce "evidence that the heaters fell below any established standard of performance."

## DISCUSSION

■ In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All factual inferences are to be drawn in favor of the party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989). Applying these rules, we decide that summary judgment was inappropriate as to both the unseaworthiness and negligence claims in this case.

■ Because "'liability based upon unseaworthiness is wholly distinct from liability based upon negligence,'" each claim in this case must be addressed under the applicable legal standard. *Karvelis v. Constellation Lines S.A.*, 806 F.2d 49, 52 (2d Cir.1986) (quoting *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971)), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). Under the principles of seaworthiness, an owner has an absolute duty to furnish a ship, crew, and appurtenances reasonably fit for their intended service. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549, 80 S.Ct. 926, 932, 4 L.Ed.2d 941 (1960); *Martinez v. United*

*States,* 705 F.2d 658, 660 (2d Cir.1983). An owner's failure to provide a ship, crew, and appurtenances reasonably fit for their intended service results in "a species of liability without fault," *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946), and such liability "does not depend either on negligence ... or on notice," *Martinez,* 705 F.2d at 660 (citations omitted). A ship is considered to be unseaworthy when it is "insufficiently or defectively equipped." *Waldron v. Moore–McCormack Lines, Inc.,* 386 U.S. 724, 726, 87 S.Ct. 1410, 1412, 18 L.Ed.2d 482 (1967) (footnote omitted); *see Poignant v. United States,* 225 F.2d 595, 598 (2d Cir.1955).

■ Unlike the law of unseaworthiness, which focuses on the condition of the vessel, *Usner,* 400 U.S. at 498, 91 S.Ct. at 517, the Jones Act places a separate and distinct duty on the owner to provide a reasonably safe workplace, *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 102–03, 64 S.Ct. 455, 458–59, 88 L.Ed. 561 (1944). Under the Jones Act, a "plaintiff is entitled to go to the jury if 'the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury ... for which damages are sought.'" *Diebold v. Moore McCormack Bulk Transport Lines, Inc.,* 805 F.2d 55, 57–58 (2d Cir.1986) (emphasis in original) (quoting *Rogers v. Missouri Pacific R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)).

■ We have observed that, in Jones Act cases, "[t]he right of the jury to pass upon the question of fault and causation must be most liberally viewed." *Johannessen v. Gulf Trading & Transp. Co.,* 633 F.2d 653, 656 (2d Cir.1980). Bearing this observation in mind, we identify several material fact issues in this case that cannot be resolved on summary judgment but must be submitted to the fact-finder. First, Rule 21 of the Harbor Unit Safety Rules directs Harbor Unit employees to "[s]prinkle salt or sand on icy or slippery places." While it is true that Sergeant Smith affirmed that this rule referred only to walkways on land and that it would not

be practicable to apply salt or sand to the deck of a vessel, a jury could find otherwise. Whether failure to provide an abrasive substance to alleviate the slippery condition of the deck played even the "slightest" part in Oxley's injury surely is a question for trial.

Second, the effect of the broken cleat and the need for a gangplank are material facts in dispute. The question whether the City was negligent in failing to provide a safe means of docking and boarding requires a resolution of those factual matters. A failure to provide a reasonably safe means of ingress and egress, in violation of the long-established duty of a shipowner to make such provision, may be found in the facts revealed here. *See Massey v. Williams–McWilliams, Inc.,* 414 F.2d 675, 677–79 (5th Cir.1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970). Oxley alleged that a broken cleat made docking and boarding difficult. Several witnesses indicated that the pilot of the Launch was required to keep as much tension as possible on the line attached to the broken cleat to prevent the rope from slipping off. With the tension, the Launch would be held by a single line, leaving open the possibility that the Launch could swing around and be driven onto the dock by the surf. In any event, there was a two-to-three foot gap between boat and deck, possibly owing to the broken cleat. Moreover, there was a difference in height between dock and Launch, with no gangplank for the corrections officer to use in boarding.

Third, there is the factual issue raised by Oxley's claim that the under-deck heaters were incapable of removing ice from the deck. Negligence may be predicated upon a shipowner's failure to furnish a reasonably safe workplace, *see Mahnich,* 321 U.S. at 102, 64 S.Ct. at 458, and the question here is whether the deck was more slippery than was reasonable under the circumstances. Ice on the deck of a ship in mid-Atlantic waters in the winter would not be unusual or unreasonable, while ice on the deck of a frequently docked police launch used for harbor patrol might be considered unreasonable. The fact that the heaters functioned as designed on the night Oxley

was injured does not eliminate the question whether they were adequate for the task.

It seems to us that Oxley's claim of unseaworthiness also must be resolved by a jury. To prevail on this claim, Oxley need only prove that the Launch was insufficiently or defectively equipped, *Waldron*, 386 U.S. at 726, 87 S.Ct. at 1411–12, and that his injuries resulted from the unseaworthy condition of the vessel, *see Poignant*, 225 F.2d at 596. By presenting evidence that the Launch was not furnished with salt or sand and that the under-deck heating system was inadequate, Oxley raised issues of defect and insufficiency in the vessel's equipment to be resolved at trial. Moreover, a vessel is considered unseaworthy if it lacks a safe place of ingress and egress, *Buch v. United States*, 122 F.Supp. 25, 26 (S.D.N.Y.1954), *aff'd*, 220 F.2d 165 (2d Cir.1955), and the absence of a ladder or gangplank for safe ingress and egress on Launch No. 2 gives rise to a separate triable issue of unseaworthiness based on inadequate equipment. "This fact-finding process was for the jury, and we find the evidence of causation sufficient to take the claim [of unseaworthiness] to the jury." *Johannessen*, 633 F.2d at 656–57.

We agree with the determination of the district court that there is no material issue of fact arising from Oxley's contention that the City failed to provide adequate lighting for the Launch. All the evidence indicates that the lights were functioning properly and illuminated the entire deck at the time of the accident. Reasonable minds could not differ as to the import of this evidence, *see Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511, and there is no basis for a claim of negligence or a claim of unseaworthiness predicated on insufficient illumination in this case.

## CONCLUSION

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.