James **LENDINO**, Plaintiff–Appellant,

v.

**TRANS UNION CREDIT INFORMATION CO.,** Defendant–Appellee.

**No. 1631, Docket 92–7206.**

United States Court of Appeals, Second Circuit.

Argued June 4, 1992.

Decided July 27, 1992.

Tedd Blecher, New York City, for plaintiff-appellant.

Mark E. Kogan, Philadelphia, Pa. (Mark E. Kogan & Associates, of counsel), for defendant-appellee.

Before: OAKES, Chief Judge, McLAUGHLIN, Circuit Judge, and LAY, Senior Circuit Judge.*

LAY, Senior Circuit Judge:

James Lendino appeals the district court's grant of summary judgment in favor of Trans Union Credit Information Company (Trans Union), a consumer credit reporting agency. Lendino claims that Trans Union violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t (1988), by disseminating obsolete information about his credit history.[1] The district court found no genuine issue of material fact, and determined that Lendino failed to make a sufficient showing that Trans Union ever issued the obsolete information. We respectfully disagree and vacate the grant of summary judgment.

*Background*

In 1977, a bankruptcy court discharged all dischargeable debts incurred by Lendino, including a debt to Citibank for over $900. Under 15 U.S.C. § 1681c, consumer reporting agencies are prohibited from reporting adverse credit information which antedates the report by more than seven years. Lendino claims that although he frequently informed Trans Union of its error, it reported the discharged Citibank debt from 1978 to 1987 in violation of section 1681c.

In April of 1987, Bloomingdale's denied Lendino's application for a credit card, indicating that its decision was based "in part, or in full," on credit information it received from Trans Union. Lendino contacted

---

* Hon. Donald P. Lay, Senior United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Section 1681o provides that any consumer reporting agency which is negligent "in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer ... [for] actual damages sustained by the consumer as a result of the failure," and for court costs and attorney's fees. 15 U.S.C. § 1681o. Punitive damages may also be awarded in cases of willful noncompliance. 15 U.S.C. § 1681n.

Trans Union to request a copy of his credit report and was ultimately sent three credit files: (1) a credit report for a "James R. Lending" which contained Lendino's correct social security number and address; (2) a report for a "James Lendino" which also contained the correct social security number and address; and (3) a report for a "James Lendino, Jr." which had an incorrect address and a slightly incorrect social security number. Only the report for "James Lendino, Jr." contained a reference to the discharged Citibank debt; the other two reports indicated no delinquent credit accounts or any other adverse information.

According to Trans Union, when credit information is requested and reported, that inquiry is automatically recorded in, or "posted" to, an individual's credit report. The only Lendino file which indicated access by Bloomingdale's was the report in the name of "James R. Lending," which did not contain a reference to the Citibank account.[2] In an affidavit filed with the court, however, Lendino claimed that an unidentified Trans Union representative told him over the telephone that the three reports sent to him were also furnished to Bloomingdale's.

The district court relied upon Trans Union's asserted practice of automatically recording access to credit reports in its finding that the credit report sent to Bloomingdale's did not contain a reference to the obsolete Citibank debt. The court noted that even if a Trans Union employee did tell Lendino that all three reports were sent to Bloomingdale's, such information was clearly erroneous in light of the absence of an access notice posted to either of the other two credit files.

*Discussion*

The principles governing the grant or denial of summary judgment are well established. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Suffice it to say, the non-moving party must, under Federal Rule of Civil Procedure 56, demonstrate to the court the existence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. As the Supreme Court has observed, the standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."[3] *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. It has long been the rule that "[o]n summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion...." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

In the present case, Trans Union denies forwarding to Bloomingdale's the bad credit history of Lendino. It urges that Lendino has produced no evidence to dispute this material fact. However, Lendino argues that this is a disputed issue of material fact because of his claim that a Trans Union representative told him all three reports were sent to Bloomingdale's. Corroborative of this statement, Lendino further argues that a reasonable inference can be drawn from the documentary exhibits that Trans Union did issue the obsolete information to Bloomingdale's. Lendino relies upon (1) Bloomingdale's letter to Lendino[4] indicating that its rejection was based in part or in full on Trans Union information, and (2) the fact that the good credit rating shown in the "James R. Lending" report would have afforded no reason-

---

**2.** The report indicated a Bloomingdale's inquiry and access on April 1, 1987.

**3.** Under the amendments to the Rules of Civil Procedure, a motion for a directed verdict is now called a motion for judgment as a matter of law. *See* FRCP 50(a) (as amended April 30, 1991, eff. Dec. 1, 1991).

**4.** Although Trans Union allegedly sent Bloomingdale's a credit report in the name of "James R. Lending," Bloomingdale's correspondence to Lendino was addressed to "James Lendino."

able basis for Bloomingdale's to deny Lendino's credit application.[5]

 We believe a reasonable jury could find from the totality of evidentiary circumstances contained in this limited record that the defendant transmitted the negative credit report containing the obsolete Citibank information to Bloomingdale's. There is, at least on the present record, no other evidence which reasonably demonstrates why Bloomingdale's rejected Lendino's credit application.[6] As this court stated in *Donahue v. Windsor Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987), "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *See also Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991); *Oxley v. City of New York*, 923 F.2d 22, 24 (2d Cir.1991).

In *Adickes*, despite affidavits by police officers denying that they had entered into a conspiracy with a restaurant owner, the mere presence within the restaurant of a police officer at the time the restaurant refused service to the plaintiff, a white teacher accompanied by black students, established a sufficient inference of conspiracy to overcome a summary judgment in the teacher's civil rights action. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1609. On remand in *Celotex, sub. nom. Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988), the court found plaintiff's submission of hearsay evidence and documentary proof sufficient to create an inference that the plaintiff had been exposed to defendant's asbestos products, thus defeating the defendant's motion for summary judgment.

 Summary judgment may be utilized as an effective tool to avoid plenary trials where there exists no reasonable possibility that a jury may render a verdict for the nonmovant. Summary judgment should not be used, however, where credibility issues remain on disputes of material fact even though those disputes concern the inferences which may be drawn from indirect proofs. We thus find that the district court erred in granting the motion for summary judgment in favor of Trans Union and that Lendino is entitled to a plenary trial.

Judgment reversed.

---

5. The credit report in the name of "James R. Lending," which Trans Union claims it sent to Bloomingdale's, shows current accounts with several concerns, including a $5,000 credit limit on a Chemical Bank account, and a $1,500 credit limit on a Spiegel's account.

6. According to Lendino, a Bloomingdale's representative deposed on December 27, 1991, on the issue of the store's rejection of Lendino's 1987 credit application testified that the store no longer had any record of the application. Appellant's Brief at 7.