**GRAIN TRADERS, INC.,**
**Plaintiff–Appellant,**

v.

**CITIBANK, N.A., Defendant–Appellee.**

No. 97–7620.

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1998.

Decided Oct. 27, 1998.

Scott J. Steiner, Steiner & Ebeling, LLP, White Plains, New York, for Plaintiff–Appellant.

J. Kelley Nevling, Jr., Citibank Legal Affairs Office, New York, New York, for Defendant–Appellee.

Bruce E. Clark, Sullivan & Cromwell, New York, New York (Norman R. Nelson, General Counsel, The New York Clearing House Association, H. Rodgin Cohen, and Tamar Feder, Sullivan & Cromwell, of counsel), for Amicus Curiae The New York Clearing House Association.

Before: WALKER and JACOBS, Circuit Judges, and MISHLER, District Judge.*

JOHN M. WALKER, Jr., Circuit Judge.

Plaintiff Grain Traders, Inc., ("Grain Traders") appeals from the April 16, 1997, judgment granting summary judgment for defendant Citibank, N.A., ("Citibank") and dismissing Grain Traders's diversity action brought under Article 4–A of New York's Uniform Commercial Code ("Article 4–A") and principles of common law seeking a refund from Citibank for an alleged uncompleted electronic funds transfer.

## BACKGROUND

Grain Traders, in order to make a payment of $310,000 to Claudio Goidanich Kraemer ("Kraemer"), initiated a funds transfer on December 22, 1994, by issuing a payment order to its bank, Banco de Credito Nacional ("BCN"), that stated

WE HEREBY AUTHORIZE YOU DEBIT OUR ACCOUNT NR.509364 FOR THE AMOUNT OF US$ 310,000.00 AND TRANSFER TO:

BANQUE DU CREDIT ET INVESTISSEMENT LTD. ACCOUNT 36013997 AT CITIBANK NEW YORK IN FAVOUR OF BANCO EXTRADER S.A. ACCOUNT NR. 30114—BENEFICIARY CLAUDIO GOIDANICH KRAEMER—UNDER FAX ADVISE TO BANCO EXTRADER NR. 00541–318 0057/318–0184 AT. DISTEFANO/M. FLIGUEIRA.

Thus the transfer, as instructed by Grain Traders, required BCN to debit Grain Traders's account at BCN in the amount of $310,000, and then to issue a payment order to Citibank. That payment order, in turn, was to require Citibank to debit $310,000 from BCN's account at Citibank and to credit that amount to the account that Banque du Credit et Investissement Ltd. ("BCIL") maintained at Citibank. Citibank, in turn, was to issue a payment order to BCIL instructing it to transfer, by unspecified means, $310,000 to Banco Extrader, S.A. ("Extrader"). Extrader was then to credit the $310,000 to the account maintained at Extrader by Kraemer.

BCN duly carried out Grain Traders's instructions. Citibank, in turn, executed BCN's payment order by debiting $310,000 from BCN's account at Citibank, crediting that amount to BCIL's account at Citibank,

* The Honorable Jacob Mishler, of the United States District Court for the Eastern District of New York, sitting by designation.

and issuing a payment order to BCIL concerning the further transfers.

Both BCIL and Extrader suspended payments at some point after Citibank executed the payment order. BCIL apparently began closing its offices on December 31, 1994, and its banking license was revoked in July of 1995. Similarly, Extrader became insolvent sometime in late December of 1994 or early January of 1995. On December 28, 1994, apparently at Grain Traders's request, BCN contacted Citibank and requested cancellation of its payment order and return of the amount of the payment order. The message sent by BCN stated:

> REGARDING OUR PAYMENT ORDER FROM 12/22/94 FOR USD 310,000 TO BANCO EXTRADER S.A. ACCT. NO. 30114 F/O BANQUE DE CREDIT ET INVESTISSEMENT LTD. ACCT NO. 36013997 F/C TO CLAUDIO GOLDA-NICH [SIC] KRAEMER. PLEASE NOTE THAT WE ARE REQUESTING FUNDS BACK AS SOON AS POSSIBLE. YOUR IMMEDIATE ATTENTION TO THIS MATTER IS APPRECIATED.

Citibank sought authorization from BCIL to debit the amount that had been credited to its account on December 22, 1994, and, after several unsuccessful attempts to contact BCIL, received a message on January 3, 1995, from BCIL that purportedly authorized the debit. Citibank asserts that it was at this juncture that it determined that BCIL had exceeded its credit limitations and placed the account on a "debit no-post" status, meaning no further debits would be posted to the account. Citibank refused BCN's request to cancel the payment order, stating:

> RE: YOUR PAYMENT [ORDER] … WE ARE UNABLE TO RETURN FUNDS AS BNF [SIC] BANK HAS AN INSUFFICIENT BALANCE IN THEIR ACCOUNT. FOR FURTHER INFORMATION WE SUGGEST THAT YOU CONTACT THEM DIRECTLY. WE CLOSE OUR FILE.

In November of 1995, Grain Traders filed this action seeking a refund from Citibank pursuant to U.C.C. §§ 4–A–402(4), 4–A–209, 4–A–301, 4–A–305, and 1–203, as well as common law theories of conversion and money had and received. Grain Traders alleges that the transfer was never completed—i.e., Extrader never credited Kraemer's account for the $310,000. Grain Traders further claims that the reason the transfer was not completed was because Citibank had already placed BCIL's account on a "hold for funds" status before it credited the $310,000 intended for Kraemer to BCIL's account. By making the credit to BCIL's allegedly frozen account, Grain Traders contends, Citibank improperly used the funds to offset BCIL's indebtedness to it and prevented BCIL from withdrawing the funds to complete the transfer.

Grain Traders moved for summary judgment on its Article 4–A claim. Citibank cross-moved for summary judgment on the grounds that Grain Traders had failed to state a claim under Article 4–A, could not establish its common law claims, and that its common law claims were, in any event, pre-empted by Article 4–A. The district court denied summary judgment to Grain Traders and granted summary judgment in favor of Citibank. Grain Traders now appeals.

## DISCUSSION

In its opinion, the district court held that (1) Section 402 of Article 4–A established a cause of action only by a sender against its receiving bank, thus Grain Traders, who was a sender only with respect to BCN, had sued the wrong bank; (2) Sections 4–A–209, 4–A–301, 4–A–305, and 1–203 of the U.C.C. did not create causes of action; and (3) Grain Traders could not establish elements necessary to its common law claims of conversion and money had and received. *See Grain Traders, Inc. v. Citibank, N.A.*, 960 F.Supp. 784, 789, 792–93 (S.D.N.Y.1997). The district court did not reach Citibank's argument that the common law claims were pre-empted by Article 4–A. *Id.* at 793 n. 8. On appeal, Grain Traders argues that the district court erred in dismissing its claim under U.C.C. § 4–A–402 and its common law claims. It also argues that the district court abused its discretion in declining to consider an alleged assignment made by BCN to Grain Traders after Citibank had cross-moved for summary

judgment and in dismissing Grain Traders's complaint without granting leave to replead on the basis of the assignment. Grain Traders does not appeal the dismissal of its claims under Sections 4–A–209, 4–A–301, 4–A–305, and 1–203 of the U.C.C., and thus these claims are not a subject of this opinion. For the following reasons, we affirm the district court's judgment.

## I. Standard of Review

We review the district court's grant of summary judgment *de novo,* drawing all reasonable inferences and resolving all ambiguities in favor of the non-movant. *See Lendino v. Trans Union Credit Information Co.,* 970 F.2d 1110, 1112–13 (2d Cir.1992); *Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). Summary judgment is appropriate if the evidence offered, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, there "is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. When a defendant moving for summary judgment has pointed to the absence of evidence to support an essential element on which the plaintiff has the burden of proof, the plaintiff, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c).

## II. Article 4–A Claims

Article 4–A of the U.C.C. governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers.[1] A funds transfer is defined as a

> series of transactions, beginning with the originator's payment order [and] includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order.

N.Y.U.C.C. § 4–A–104(1). A "payment order" is defined as

> an instruction of a sender to a receiving bank ... to pay, or to cause another bank to pay, a fixed or determinable amount of money [where] the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender, and ... the instruction is transmitted by the sender directly to the receiving bank.

N.Y.U.C.C. § 4–A–103(1)(a). Thus, as noted by the district court, "funds are 'transferred' through a series of debits and credits to a series of bank accounts." *Grain Traders,* 960 F.Supp. at 788. A "sender" is defined as "the person giving the instruction [directly] to the receiving bank," and a "receiving bank" is defined as "the bank to which the sender's instruction is addressed ." There are other defined roles in a given funds transfer for the senders, receiving banks, or other participants, including the "originator" of the funds transfer (here Grain Traders), the "originator's bank" (here BCN), the "beneficiary" (here Kraemer) and the "beneficiary's bank" (here Extrader). For any given funds transfer, there can be only one originator, originator's bank, beneficiary, and beneficiary's bank, but there can be several senders and receiving banks, one of each for every payment order required to complete the funds transfer. *See* N.Y.U.C.C. § 4–A–103.

### 1. Grain Traders's Refund Claim under § 4–A–402

Section 4–A–402 ("Section 402") covers the obligation of a sender of a payment order to make payment to the receiving bank after the order has been accepted as well as the obligation of a receiving bank to refund pay-

---

**1.** For discussions on the mechanics of electronic funds transfers and Article 4–A, see generally *Banque Worms v. BankAmerica Int'l,* 77 N.Y.2d 362, 568 N.Y.S.2d 541, 570 N.E.2d 189 (1991);

*Delbrueck & Co. v. Manufacturers Hanover Trust Co.,* 609 F.2d 1047, 1048 n. 1 (2d Cir.1979); *Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 951 F.Supp. 403, 406–07 (S.D.N.Y.1995).

ment in the event the transfer is not completed. It provides, in relevant part,

> (3) ... With respect to a payment order issued to a receiving bank other than the beneficiary's bank, acceptance of the order by the receiving bank obliges the sender to pay the bank the amount of the sender's order.... The obligation of that sender to pay its payment order is excused if the funds transfer is not completed....
>
> (4) If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid [because the funds transfer was not completed], the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay.

§ 4–A–402(3), (4). Thus, under Section 402(3), the sender's obligation to pay the receiving bank is excused in the event that the transfer is not completed. If payment has already been made, a sender can seek a refund from the bank it paid under Section 402(4). It was this so-called "money-back guarantee" provision that Grain Traders invoked to obtain a refund from Citibank.

The district court held that Grain Traders's refund action against Citibank, an intermediary bank for the purposes of Grain Traders's funds transfer, was barred because a Section 402 refund action could only be maintained by a "sender" against the receiving bank to whom the sender had issued a payment order and whom the sender had paid. Thus, because Grain Traders was a "sender" only with respect to the payment order it issued to BCN, Grain Traders could look only to BCN, the receiving bank, for a refund.

In reaching its conclusion, the district court relied on the plain language of Section 402(4) as well as other provisions of Article 4–A. It found that the language of Section 402(4) establishes a right of refund only between a sender and the receiving bank it paid. BCN, not Grain Traders, was the sender that issued the payment order to Citibank and paid Citibank by having its account debited in the amount of $310,000. Grain Traders argues that the fact that Section 402(4) does not use the words "receiving bank" but instead refers to "the bank receiv-

ing payment" means that the sender can sue any bank in the chain that received payment. We agree with Citibank that because the words "receiving bank" are defined as the bank that receives a payment order, Section 402(4)'s use of the words "bank receiving payment" simply clarifies that the right to a refund arises only after the sender has satisfied its obligation to pay the receiving bank.

■ The Official Comment to § 4–A–402 supports this interpretation. It states, in relevant part:

> [t]he money-back guarantee [of § 4–A–402(4) ] is particularly important to Originator if noncompletion of the funds transfer is due to the fault of an intermediary bank rather than Bank A [the Originator's bank]. *In that case Bank A must refund payment to Originator, and Bank A has the burden of obtaining refund from the intermediary bank that it paid.*

§ 4–A–402, cmt. 2 (emphasis added). We think this comment makes plain the intent of the Article 4–A drafters to effect an orderly unraveling of a funds transfer in the event that the transfer was not completed, and accomplished this by incorporating a "privity" requirement into the "money back guarantee" provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole.

The district court also relied on the express right of subrogation created by Section 402(5), which applies when one of the receiving banks is unable to issue a refund because it has suspended payments. Section 402(5) provides that:

> If a funds transfer is not completed as stated in subsection (3) and an intermediary bank is obliged to refund payment as stated in subsection (4) but is unable to do so because not permitted by applicable law or because the bank suspends payments, a sender in the funds transfer that executed a payment order in compliance with an instruction, as stated in [§ 4–A–302(1)(a) ] to route the funds transfer through that intermediary bank is entitled to receive or retain payment from the sender of the payment order that it accepted. The first

sender in the funds transfer that issued an instruction requiring routing through that intermediary bank is subrogated to the right of the bank that paid the intermediary bank to refund as stated in subsection (4).

Where a right to refund has been triggered because a transfer was not completed, but one of the banks that received payment is unable to issue a refund because it has suspended payments, the orderly unraveling of the transfer is prevented and the risk of loss will be borne by some party to the transfer. Article 4-A allocates that risk of loss to the party that first designated the failed bank to be used in the transfer. *See* N.Y.U.C.C. § 4-A-402, cmt. 2 (where "Bank A [the sender] was required to issue its payment order to Bank C [the insolvent bank] because Bank C was designated as an intermediary bank by Originator[,] . . . . Originator takes the risk of insolvency of Bank C"). Under Section 402(5), all intervening senders are entitled to receive and retain payment and the party that designated the failed bank bears the burden of recovery by being subrogated to the right of the sender that paid the failed bank. We agree with the district court that

> the subrogation language of § 4-A-402(5) demonstrates that the originator does not, as a general matter, have a right to sue all the parties to a funds transfer . . . . [and] makes clear . . . that under § 4-A-402(4) no right to a refund otherwise exists between the originator and an intermediary bank. This is evident because there would be no need for the subrogation language of subsection (5) if the originator (as the first sender) already had a right to assert a refund claim directly against all intermediary banks.

960 F.Supp. at 790.

In sum, we agree with the district court's thoughtful analysis and conclude that § 4-A-402 allows each sender of a payment order to seek refund only from the receiving bank it paid. Not only do the provisions of Article 4-A support the district court's interpretation, there are sound policy reasons for limiting the right to seek a refund to the sender who directly paid the receiving bank. One of Article 4-A's primary goals is to promote certainty and finality so that "the various parties to funds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately." N.Y.U.C.C. § 4-A-102, cmt. To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer. These are matters as to which an intermediary bank ordinarily should not have to be concerned and, if it were otherwise, would impede the use of rapid electronic funds transfers in commerce by causing delays and driving up costs. Accordingly, we affirm the district court's dismissal of Grain Traders's refund claim under Section 402(4).

### B. Common Law Claims

The district court also granted summary judgment to Citibank on Grain Traders's common law claims for conversion and money had and received, finding that Grain Traders could not establish essential elements of those claims. We do not address the district court's holding, however, because we agree with Citibank's argument, raised below but not reached by the district court, that even assuming Grain Traders could establish its claims, they are precluded by Article 4-A.

Whether and to what extent Article 4-A precludes common law actions is a matter of first impression for this court. Article 4-A was enacted to correct the perceived inadequacy of " 'attempt[ing] to define rights and obligations in funds transfers by general principles [of common law] or by analogy to rights and obligations in negotiable instruments law or the law of check collection.' " *Banque Worms v. BankAmerica Int'l,* 77 N.Y.2d 362, 369, 568 N.Y.S.2d 541, 570 N.E.2d 189 (1991) (quoting Official Comment to N.Y.U.C.C. § 4-A-102). The Official Comment to Section 4-A-102 states that the provisions of Article 4-A

> represent a careful and delicate balancing of [competing] interests and are intended

to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

Similarly, Section 4–A–212 states, in relevant part,

[L]iability based on acceptance arises only when acceptance occurs as stated in Section 4–A–209, and liability is limited to that provided in this Article. A receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this article or by express agreement.

■■■ We agree with those courts that have interpreted the above language to preclude common law claims when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4–A. *See, e.g., Banco de la Provincia de Buenos Aires v. BayBank Boston N.A.,* 985 F.Supp. 364, 369–70 (S.D.N.Y.1997) (for conversion claim to stand, it cannot be inconsistent with Article 4–A); *Centre–Point Merchant Bank Ltd. v. American Express Bank Ltd.,* 913 F.Supp. 202, 206 (S.D.N.Y.1996) (exclusivity of Article 4–A is restricted to any situation covered by particular provisions of the Article and resort to common law must not be inconsistent); *Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 951 F.Supp. 403, 407–08 (S.D.N.Y.1995) (same); *see also Cumis Ins. Soc., Inc. v. Citibank, N.A.,* 921 F.Supp. 1100, 1110 (S.D.N.Y.1996) (claim for conversion failed because bank's actions expressly authorized by Article 4–A); *Aleo International, Ltd. v. Citibank, N.A.,* 160 Misc.2d 950, 612 N.Y.S.2d 540, 541 (Sup.Ct. 1994) (no claim for negligence unless conduct complained of was not in conformity with Article 4–A). Because we determine that the liability sought to be imposed by Grain Traders's common law claims would be inconsistent with the provisions of Article 4–A, we do not reach the issue of whether common law

claims that concern matters expressly addressed by Article 4–A would be precluded as duplicative even if consistent. *See, e.g., Centre–Point,* 913 F.Supp. at 208 (dismissing common law claims because "specific Article 4–A provisions" applied to the transactions at issue).

Grain Traders complains primarily that Citibank credited BCIL's overdrawn account after the account had been frozen, thereby preventing BCIL from completing the transfer. According to Grain Traders, this means that Citibank did not pay BCIL. As noted by the district court, however, under Section 4–A–402(3), the obligation of payment runs only from the sender bank—the bank that sent the payment order—to the bank that received the payment order. This subsection further provides that the sending bank becomes obligated to pay the receiving bank only after the receiving bank accepts the payment order, and the obligation to pay is excused if the funds transfer is not completed. Grain Traders has forcefully argued both that BCIL did not accept Citibank's payment order and that the transfer was never completed. Accordingly, Citibank was never obligated to pay and there can be no common law claim based on Citibank's alleged failure to pay BCIL.

Grain Traders relies on *Sheerbonnet,* 951 F.Supp. 403, for the proposition that even if the obligation to pay flows to BCIL, Citibank wrongfully accepted the payment order when it knew or should have known that it had frozen BCIL's account. We reject this argument. A receiving bank has discretion as to whether to accept a payment order or reject it. *See* N.Y.U.C.C. §§ 4–A–209, –210; *see also Banco de la Provincia,* 985 F.Supp. at 368–69. We need not decide whether *Sheerbonnet* was correctly decided because, to the extent it can be read as allowing a claim for wrongful acceptance, it is distinguishable on the ground that there the receiving bank accepted a payment order after it had been informed that the bank whose account it was being asked to credit had been seized by regulatory authorities, a situation the district court found was not expressly addressed by Article 4–A. *See* 951 F.Supp. at 405–06, 409–12. Here, by contrast, all of Grain Traders's

allegations have been expressly addressed by Article 4–A.

Grain Traders also complains that Citibank refused to cancel the payment order as requested by BCN on December 28, 1994, notwithstanding the debit authorization it received from BCIL on January 3, 1995. Grain Traders argues that Citibank wrongfully ignored BCIL's rejection of its payment order when Citibank refused to cancel. This argument confuses the different payment orders issued by BCN and Citibank as well as the difference between rejection of a payment order (allegedly what BCIL did) and cancellation of a payment order that has already been accepted (which is what BCN requested). Section 4–A–211, entitled "Cancellation and Amendment of Payment Order," provides

> (2) . . . [A] communication by the sender cancelling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the payment order.
>
> (3) After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees. . . .

The Official Comment to Section 4–A–211 states "[c]ancellation by the sender after execution of the order by the receiving bank requires the agreement of the bank. . . . *[A] receiving bank may agree to cancellation or amendment of the payment order . . . but is not required to do so regardless of the circumstances.*" (emphasis added); *see also Cumis Ins.*, 921 F.Supp. at 1110 (under Article 4–A, receiving bank has no obligation to

---

**2.** We reject out of hand Grain Traders's attempt to argue that Section 4–A–402(5) applies only when the suspension of payments itself is responsible for the non-completion of the funds transfer. That rule clearly states that the relevance of the suspension of payments is to the intermediary bank's ability to issue a refund to the sender that paid it. Here, it is undisputed that BCIL suspended payments and so was unable to issue a refund as of the time Grain Traders filed its refund action in November of 1995.

**3.** Section 4–A–403 reads:

agree to return funds once it has accepted payment order).

It cannot be disputed that Citibank accepted the payment order it received from BCN by executing it according to BCN's instructions. Acceptance by an intermediary bank occurs when that intermediary bank "issues a payment order intended to carry out the payment order [it] received," at which point the intermediary bank becomes a sender of the payment order it issues. *See* N.Y.U.C.C. §§ 4–A–103, –209, –301.

Because Citibank had already accepted BCN's payment order by issuing a payment order to BCIL, it was under no obligation to cancel the payment order when BCN so requested, regardless of whether BCIL rejected the payment order issued by Citibank. Any common law claim that would impose liability on Citibank for failing to cancel BCN's payment order is precluded as inconsistent with Article 4–A.

Finally, Grain Traders contends that Citibank is obligated to issue a refund because it retained funds intended for a third party. This argument necessarily hinges on whether or not Citibank's crediting of BCIL's account constituted payment. If the credit was payment, then under Section 402(5), Citibank would be excused from issuing a refund by BCIL's subsequent suspension of payments.[2] Under such circumstances, any common law claim that would require Citibank to issue a refund would be inconsistent with Article 4–A and, thus, is precluded.

Grain Traders argues that Section 402(5) is inapplicable because Citibank's credit to BCIL's allegedly frozen account was neither withdrawn nor withdrawable and, therefore, did not constitute payment under Section 4–A–403.[3] The New York Clearing House As-

---

**Payment by Sender to Receiving Bank**
(1) Payment of the sender's obligation under Section 4–A–402 to pay the receiving bank occurs as follows:

> . . . .
>
> (b) If the sender is a bank and the sender (i) credited an account of the receiving bank with the sender, or (ii) caused an account in another bank to be credited, *payment occurs when the credit is withdrawn or, if not withdrawn, at midnight of the day on which the credit is withdrawable and the receiving bank learns of that fact.*

sociation (the "Clearing House"), as *amicus curiae* in support of Citibank, argues persuasively that a credit to a frozen account constitutes payment because it reduces the indebtedness owed by the account holder to the bank, which, under elementary principles of contract law, is a valid form of consideration. The Clearing House further argues that Citibank's credit to BCIL's account also constituted payment in accordance with the terminology used in Section 4–A–403 because the funds were immediately withdrawn by virtue of the fact that they reduced BCIL's indebtedness.

While we are inclined to agree with the Clearing House's argument that Citibank in fact paid BCIL, we need not decide the issue because Grain Traders's common law claims would be precluded even if Citibank did not pay. As discussed in Part A of this opinion, under Section 4–A–402(4) any obligation on Citibank's part to refund the $310,000 would be owed only to BCN. Any common law claim that would allow Grain Traders to seek a refund directly from Citibank would circumvent *this privity requirement and so must be precluded.* Grain Traders's allegations that its common law claims should survive because Citibank acted wrongfully in some way does not alter this analysis. Indeed, the Official Comment to Section 402 expressly provides that BCN, not Grain Traders, would bear the burden of obtaining a refund from Citibank even if Citibank were at fault for the noncompletion of the transfer. *See* N.Y.U.C.C. § 4–A–402, cmt. 2 ("The money-back guarantee is particularly important to Originator if noncompletion of the funds transfer is due to the fault of an intermediary bank rather than Bank A. In that case Bank A has the burden of obtaining refund from the intermediary bank that it paid.").

Because there is no theory of liability to support Grain Traders's common law claims for conversion and money had and received that would be consistent with the rights and liabilities created by Article 4–A, we affirm the district court's grant of summary judgment on those claims.

(emphasis added).

## C. BCN's Alleged Assignment to Grain Traders

On April 12, 1996, approximately five weeks after Citibank filed its cross-motion for summary judgment, BCN executed a document purporting to assign to Grain Traders all of BCN's rights against Citibank arising out of the funds transfer. The district court declined to consider the assignment, stating:

> Even if Grain Traders was able to show that a claim by BCN would not be time-barred, the assignment would still be invalid here because the allegations in the complaint refer solely to Grain Traders's claims against Citibank and not to those of BCN. Furthermore, Grain Traders may not simply change its theory of the case at this late stage of the proceedings. Thus, I shall not consider the assignment in deciding these motions.

960 F.Supp. at 791 n. 6.

■ Grain Traders argues that the district court improperly disregarded its claim that BCN had assigned all its rights against Citibank to Grain Traders. We disagree. The assignment could not have been pleaded in the complaint, given that it occurred after the complaint was filed. Moreover, Grain Traders did not seek leave to file an amended complaint or to file a supplemental pleading under Fed.R.Civ.P. 15. Accordingly, the issue of the assignment was not properly before the court. *See Atlas Chem. Indus., Inc. v. Moraine Prods.*, 509 F.2d 1, 7–8 (6th Cir.1974) (award vacated where basis for relief was not included in any pleading and therefore was not properly before court); *see also Automatic Switch Co. v. Cutler–Hammer Mfg. Co.*, 147 F. 250, 252 (supplemental pleading was required where assignment occurred after complaint was filed), *amended by* 148 F. 1017 (2d Cir.1906).

■ Grain Traders further asserts that, in light of the district court's holding that Grain Traders's action should have been brought against BCN as opposed to Citibank, it was an abuse of discretion for the court to grant summary judgment without giving Grain Traders an opportunity to replead.

**106**

We review the district court's dismissal of a complaint with prejudice for abuse of discretion. *See Foman v.. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In light of the fact that both parties here moved for summary judgment and, as discussed above, Grain Traders neither moved to file a supplemental pleading nor sought leave to amend its complaint, we find that the district court did not abuse its discretion in granting summary judgment without *sua sponte* granting leave to replead.

### CONCLUSION

We hold that Section 402 of Article 4–A imposes a privity requirement such that a sender seeking a refund for an uncompleted funds transfer may look only to the receiving bank to whom it issued a payment order and payment. As a result, Grain Traders may look only to BCN for a refund. We also hold that Grain Traders's common law claims are precluded because they seek to impose liability on Citibank that would be inconsistent with the provisions of Article 4–A.

The judgment of the district court is affirmed.