08-1927-cv
ReAmerica, S.A. v. Wells Fargo Bank International

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: May 6, 2009)                              Decided: August 11, 2009)

Docket No. 08-1927-cv

REAMERICA, S.A.,

       *Plaintiff-Appellant*,

       v.

WELLS FARGO BANK INTERNATIONAL,

       *Defendant-Appellee*.

Before: WINTER and CABRANES, *Circuit Judges*.*

In this diversity action, plaintiff-appellant ReAmerica, S.A. appeals from a March 18, 2008 final order of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*), granting summary judgment to defendant-appellee Wells Fargo Bank International on plaintiff-appellant's claims that Wells Fargo had "wrongfully debited" ReAmerica's account and that Wells Fargo negligently transmitted the data from which one could derive the authorization code for the account. We conclude that Article 4A of the Model Uniform Commercial Code ("U.C.C.") as enacted by Minnesota, *see* Minn. Stat. § 336.4A-101 *et seq.*, governs this action, and, as a result, plaintiff-appellant's claim that Wells Fargo wrongfully debited its account is time-barred by the one-year statute of repose of section 4A-505 of the U.C.C. Additionally, we conclude that plaintiff-

---

    * The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. 46(d); Local Rule 0.14(2); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

appellant's common law negligence claim is precluded by Article 4A of the U.C.C. Accordingly, we affirm the final order of the District Court.

Affirmed.

> JOSEPH A. KILBOURN, Cone & Kilbourn, Mount Kisco, NY, *for Plaintiff-Appellant ReAmerica, S.A.*
>
> EDWARD L. POWERS (Robert A. Brundage, *of counsel*), Bingham McCutchen LLP, New York, NY, *for Defendant-Appellee Wells Fargo Bank International.*

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-appellant ReAmerica, S.A. ("plaintiff" or "ReAmerica") appeals from a March 18, 2008 final order entered in the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*), granting summary judgment to defendant Wells Fargo Bank International ("Wells Fargo") on ReAmerica's claims that (1) Wells Fargo had "wrongfully debited" ReAmerica's account and (2) Wells Fargo had negligently transmitted the data from which one could derive the authorization code for the account. *See ReAmerica, S.A. v. Wells Fargo Bank International*, No. 04 Civ. 5233, 2008 U.S. Dist. LEXIS 30614 (S.D.N.Y. Mar. 18, 2008).[1] We agree with the District Court that Article 4A of the Model Uniform Commercial Code ("U.C.C.") as enacted by Minnesota, *see* Minn. Stat. § 336.4A-101 *et seq.*, governs this action, and, as a result, plaintiff's claim that Wells Fargo wrongfully debited its account is time-barred by the one-year statute of repose set forth in section 4A-505. Additionally, we agree with the District Court that plaintiff's common law negligence claim is precluded by Article 4A of the U.C.C. Accordingly, we affirm the final order of the District Court.

---

[1] The March 18, 2008 final order also directed the Clerk of Court to close the case. Doc. No. 04-cv-5233, Entry 36 (S.D.N.Y. Mar. 18, 2008).

**BACKGROUND**

The following facts are undisputed. ReAmerica is a reinsurance company with its principal place of business in Argentina. In 1989, it opened a bank account with Norwest Bank International, a predecessor-in-interest to Wells Fargo. In 1991, the parties executed a wire transfer agreement that enabled ReAmerica to transfer electronic funds from its account. The agreement contained the following choice of law provisions:

> 11.1 Article 4A. The rights and obligations of the parties regarding funds transfers shall be governed solely by this Agreement and Article 4A of the Uniform Commercial Code ("Article 4A") without regard to whether Article 4A has been enacted in the state(s) in which the parties have their princip[al] places of business.

> 11.2 Applicable Law. This Agreement and the rights and obligations of the Bank and the User shall be governed by the law of the state in which the Bank has its princip[al] office or, if that state has not enacted Article 4A, the laws of the State of Minnesota . . . .

*ReAmerica, S.A.*, 2008 U.S. Dist. LEXIS 30614, at *3-4. For the relevant time period, Wells Fargo had its principal place of business in Minnesota.

The agreement also set forth a security procedure, which specified how the parties would complete a wire transfer. In order to initiate such a transfer, ReAmerica would prepare a payment order that included an authorization code or "test key" number, which ReAmerica derived from a table and test key formula that was provided by Wells Fargo. Wells Fargo would then verify the test key number and execute the payment order. Between January 1, 2000 and December 5, 2001, ReAmerica transmitted 139 wire transfer payment orders from its account at Wells Fargo.

During this period, a consultant to ReAmerica, Ricardo Wagner, obtained the authorization code and forged the signature of ReAmerica's chief executive officer, Carlos Romanelli, on twenty-four payment orders transmitted to Wells Fargo, to divert part of ReAmerica's funds to what is believed to be Wagner's own personal account. By e-mail dated January 28, 2002 and letter dated

3

January 29, 2002, ReAmerica requested that Wells Fargo suspend activity in the account due to its "serious suspicion" that the account was being fraudulently used. *Id.* at *6. By letter dated April 17, 2002, ReAmerica requested information from Wells Fargo regarding ReAmerica's account activity for the 2000 to 2001 time period. Although the letter stated that fraudulent activity in the account had been discovered, it did not identify the specific transactions that were fraudulent, nor did it state whether any transactions would be disputed. Wells Fargo promptly complied with ReAmerica's request and Romanelli later testified that ReAmerica was able to identify by April 2002 the specific transactions that the company intended to dispute. However, it was not until nearly two years later—on March 18, 2004—that ReAmerica notified Wells Fargo that it was disputing the twenty-four payment orders that were fraudulently initiated by Wagner.

On July 2, 2004, ReAmerica filed this action to recover $1,026,665.38—the total amount unrecovered from the disputed transfers. Specifically, ReAmerica claimed that (1) Wells Fargo had wrongfully debited its account, and (2) Wells Fargo negligently transmitted the test key data to ReAmerica by twice faxing it to the attention of one of Romanelli's employees, and not to Romanelli himself, as a result of which, ReAmerica argued, Wagner was able to obtain the data that facilitated his fraud.[2] After discovery, Wells Fargo moved for summary judgment, which the District Court granted on March 18, 2008. At the outset, the District Court agreed with the parties that, pursuant to the wire transfer agreement, the electronic fund transfers at issue were governed by Article 4A of the U.C.C. *See id.* at *11-12. With respect to ReAmerica's claim that its account was wrongfully debited, the District Court determined that section 4A-505 of the U.C.C. posed a

---

[2] In its Memorandum of Law in Opposition to Summary Judgment, ReAmerica also asserted a second negligence claim arising from Wells Fargo's alleged duty to warn ReAmerica about Wells Fargo's past, negative dealings with Wagner. The District Court noted that this claim was not raised in the Complaint, and accordingly declined to address the merits of the argument. *See ReAmerica, S.A.*, 2008 U.S. Dist. LEXIS 30614, at *23. ReAmerica does not press this argument on appeal.

procedural bar—a one-year statute of repose on claims that an account was wrongfully debited based on a payment order, which runs from the date the bank (Wells Fargo) notifies the other party (ReAmerica) of the payment order. *See id.* at *13-14. The District Court concluded that Wells Fargo had given adequate notice of the relevant payment orders, but that ReAmerica had failed to object within the requisite one-year period. *See id.* at *16-18. With respect to ReAmerica's common law claim of negligence concerning the transmission of the test key data, the District Court concluded that such a claim was precluded by Article 4A. *See id.* at *21-23. Accordingly, the District Court granted judgment in favor of defendant and ordered the case closed. This timely appeal by ReAmerica followed.

## DISCUSSION

We have jurisdiction over the state law claims in this suit on the basis of the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a)(2). We review *de novo* an order granting summary judgment. *See, e.g.*, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.

Beginning with ReAmerica's claim that Wells Fargo wrongfully debited its account, we conclude, as a threshold matter, that Article 4A as enacted by Minnesota, *see* Minn. Stat. § 336.4A-101 *et seq.*, governs the wire transfers at issue. The parties' wire transfer agreement specifically states that "[t]he rights and obligations of the parties regarding funds transfers shall be governed solely by this Agreement and Article 4A of the Uniform Commercial Code . . . without regard to whether Article 4A has been enacted in the state(s) in which the parties have their princip[al] places of business," and that those same rights and obligations "shall be governed by the law of the state in

5

which the Bank has its princip[al] office or, if that state has not enacted Article 4A, the laws of the State of Minnesota." *ReAmerica, S.A.*, 2008 U.S. Dist. LEXIS 30614, at *3-4. As a practical matter, to the extent that these two provisions are in tension, that tension is easily resolved because Minnesota has adopted Article 4A of the Model U.C.C., *see* Minn. Stat. § 336.4A-101 *et seq.* Accordingly, for our purposes Article 4A of the U.C.C. clearly governs the disputed wire transfers.

Having concluded that Article 4A applies to the transfers at issue in this case, it follows that section 4A-505 of the U.C.C., governing the "Preclusion of Objection to Debit of Customer's Account," applies to ReAmerica's wrongful debit claim. Section 4A-505 provides in full that

> [i]f a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment *unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer.*

U.C.C. § 4A-505 (emphasis added); *see also id.* official cmt. ("This section is in the nature of a statute of repose for objecting to debits made to the customer's account."). It is plain from the record before us that Wells Fargo provided ReAmerica with sufficient information about its account activity to constitute "notification reasonably identifying the order" by April 2002. As ReAmerica's chief executive officer testified at his deposition, the company knew by that month which transfers they intended to dispute. *See ReAmerica, S.A.*, 2008 U.S. Dist. LEXIS 30614, at *17 ("When asked, 'So by April of 2002, you knew which transfers you were disputing as fraudulent; isn't that correct?,' Mr. Romanelli answered, 'Yes, I did.'"). Although ReAmerica notified Wells Fargo by e-mail and letter in January 2002 that it had concerns about the account, and asked at that time that the account be frozen, those communications never identified the specific payment orders at issue, and thus were too vague to qualify as "objection[s] to the payment[s]" under section 4A-505. The same is true of ReAmerica's letter dated April 17, 2002, which indicated only that the fraudulent activity had

6

been verified, but again said nothing about the specific payment orders. ReAmerica did not inform Wells Fargo of the specific payment orders it planned to dispute until March 18, 2004—*nearly two years* after it had received reasonable notification of the orders. Accordingly, we agree with the District Court that ReAmerica's action falls outside the U.C.C.'s one-year statute of repose, and conclude that Wells Fargo's motion for summary judgment on ReAmerica's claim that Wells Fargo wrongfully debited its account was properly granted.

**B.**

Turning to ReAmerica's claim that Wells Fargo negligently transferred the test key data to ReAmerica, and thus enabled Wagner to obtain it, we note that the Official Comment to Section 4A-102 of the U.C.C. states that the provisions of Article 4A

> represent a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

U.C.C. § 4A-102 official cmt. We have previously read this language to support the proposition that Article 4A "preclude[s] common law claims when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4-A." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 103 (2d Cir. 1998).

Here, it is apparent that ReAmerica's negligence claim under Minnesota law, which ordinarily would enjoy a six-year statute of limitations, *see* Minn. Stat. § 541.05, would "impose liability inconsistent" with the liabilities created by Article 4A. *Grain Traders*, 160 F.3d at 103. As the District Court properly concluded, "[u]nder applicable law, ReAmerica cannot raise a common law negligence claim two years after the date of alleged injury and thereby create a right wholly inconsistent with the stated one year statute of repose imposed by Article 4A." *See ReAmerica, S.A.*,

7

2008 U.S. Dist. LEXIS 30614, at *22-23; *see also Zengen, Inc. v. Comerica Bank*, 158 P.3d 800, 809 (Cal. 2007) ("[B]ecause the situation [that formed] the basis of the plaintiff's common-law claims . . . is unequivocally addressed in the particular provisions of Article 4A, we conclude that those common-law claims are displaced by Article 4A . . . ." (alterations omitted)). Accordingly, we agree with the District Court's conclusion that Article 4A of the U.C.C. precludes ReAmerica's common law negligence claim, *see ReAmerica, S.A.*, 2008 U.S. Dist. LEXIS 30614, at *21-23, and we therefore conclude that the District Court properly granted defendant's motion for summary judgment on that claim.[3]

## CONCLUSION

For the reasons stated above, the March 18, 2008 final order of the District Court is **AFFIRMED**.

---

[3] Because we conclude that ReAmerica's common law negligence claim is precluded by Article 4A of the U.C.C., we need not reach Well Fargo's argument that ReAmerica's claim is likewise precluded by Federal Reserve Regulation J, or its argument that under New York State's "borrowing statute," *see* C.P.L.R. § 202 (2005), the negligence claim would also be barred by the statutes of limitations of both Argentina and New York.

8