08-4828-cv
Ma v. Merrill Lynch & Co., Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————————

August Term, 2008

(Argued: June 26, 2009                    Decided: March 2, 2010)

Docket No. 08-4828-cv

———————————————

YOUXIN MA,

*Plaintiff*,

GEORGE BROTHERS INVESTMENT CO. LTD. AND COVINA 2000 VENTURES CORP.,
*Plaintiffs-Appellants*,

—v.—

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,

*Defendant-Appellee*,

IRENE S. NG,

*Defendant*.

———————————————

Before:      DENNIS JACOBS, *Chief Judge*, B.D. PARKER, *Circuit Judge*, NICHOLAS
             TSOUCALAS, *Judge, Court of International Trade*.*

———————————————

        Appeal from a judgment of the United States District Court for the Southern District of
New York (Cote, *J.*) dismissing Plaintiffs-Appellants' claims on the ground that they are barred
by N.Y. UCC § 4-A-505.  **AFFIRMED**.

*       The Honorable Nicholas Tsoucalas, Senior Judge of the United States Court of
        International Trade, sitting by designation.

DAVID FRANCESCANI (Karolina Jesien, *on the brief*), Fish & Richardson P.C., New York, New York, *for Plaintiffs-Appellants George Brothers Investment Co. Ltd. and Covina 2000 Ventures Corp.*

LAWRENCE E. FENSTER (Lawrence D. Ross and Matthew C. Plant, *on the brief*), Bressler Amery & Ross, P.C., New York, New York, *for Defendant-Appellee Merrill Lynch, Pierce, Fenner & Smith, Inc.*

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal, arising from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*), requires us to consider whether the New York Uniform Commercial Code Section 4-A-505, which imposes a one-year statute of repose on certain claims based on electronic funds transfers, bars Plaintiffs-Appellants' common law claims, which have longer limitations periods. The District Court concluded that it does. *Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, No. 06 Civ. 15497, 2008 WL 1821738 (S.D.N.Y. Apr. 21, 2008). We agree and affirm.

## I. BACKGROUND

The relevant facts are undisputed unless otherwise noted. In 2000, Youxin Ma, a businessman with substantial interests in Asia and in this country, established Covina 2000 Ventures Corp., a British Virgin Islands-based company, and George Brothers Investment Co. Ltd., a Cayman Islands-chartered corporation, as investment vehicles. That same year, Ma opened accounts for Covina and George Brothers at Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). Merrill Lynch assigned Irene Ng, a financial advisor, as the registered representative on both

accounts. Ng was authorized to, among other things, effectuate funds transfers from the accounts upon Ma's request.

Ma maintains that Ng was involved in an elaborate scheme involving Rebecca and Terry Solomon, a married couple who pled guilty to conspiracy to commit mail and wire fraud, wire fraud, and money laundering, in connection with their perpetuation of two fraudulent investment schemes.[1] *See* Press Release, United States Department of Justice, United States Attorney's Office, Northern District of California, Husband and Wife Plead Guilty to Conspiracy, Fraud, and Money Laundering in $18 Million Investment Scheme (Sept. 26, 2008). According to Ma, Ng fraudulently, and without his knowledge, executed a loan agreement pursuant to which George Brothers was to lend the Solomons an unspecified amount of money. Apparently pursuant to this loan agreement, and in a series of approximately twenty-five wire transfers occurring from June 2002 to April 2004, Ng transferred more than $9 million from the Covina and George Brothers accounts to various accounts controlled by Rebecca Solomon.

The record is unclear as to how much Ma knew about these transactions. Twenty-four of the wire transfers' letters of authorization were apparently signed by Ma. Twenty-one of these letters contain written notations by Ng purportedly indicating that she confirmed the transactions with Ma. However, Ma maintains that Ng forged his signature on the letters of authorization and falsely noted

---

[1] The first complaint filed in this action named Ma, George Brothers, and Covina as plaintiffs. Pursuant to a Stipulation and Order dated March 14, 2007, George Brothers and Covina filed an amended complaint removing Ma as a plaintiff. However, we refer to Ma throughout this Opinion, as he is the principal officer of Covina and George Brothers, the owner of all of the funds in the Covina and George Brothers accounts, and the individual authorized to request the transfer of funds from the accounts to third party beneficiaries.

that she had confirmed the transfers with Ma. We assume, for purposes of this appeal, that, as Ma contends, the transactions were unauthorized.

The account agreements required Merrill Lynch to send Ma monthly statements summarizing the accounts' activity, such as any wire transfers executed from the accounts. The parties do not dispute that Merrill Lynch generated these statements in the ordinary course of business, that Merrill Lynch mailed them to Ma at the address he provided, and that Ma received at least some of them. None of the statements was returned as undeliverable by the post office. It is also not disputed that the Covina and George Brothers monthly account statements listed the date and amount of each wire transfer, though the statements did not identify the wire transfers' beneficiaries.

Ma's position is somewhat inconsistent. He concedes that he received some account statements during the June 2002 to April 2004 period, but maintains that he did not receive the statements on a regular basis. He also contends that he did not review any of the statements that he did receive. Instead, he relied on Ng to update him on the state of the accounts while his secretary placed the unopened statements in a storage room in his office. Ma did not notify Merrill Lynch that he believed he was not receiving his statements on a regular basis until November 2006, when he was preparing to sue. Ma also admits that, prior to that time, he was not aware that any of the statements was missing. As he put it: "[b]ecause I never reviewed a statement, therefore, I don't know whether I received it or not."

Ma sued Merrill Lynch in December 2006 (more than two years after the last allegedly fraudulent wire transfer), alleging various common law claims, including breach of contract, breach of fiduciary duty, fraud, conversion, negligence, and breach of the covenant of good faith and fair

4

dealing.[2]  Merrill Lynch moved for summary judgment on the ground that the one-year statute of repose in Section 4-A-505 of the New York Uniform Commercial Code bars all of Ma's claims.  The District Court granted Merrill Lynch's motion.  This appeal followed.  We review *de novo* the District Court's grant of summary judgment.  *See Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 134 (2d Cir. 2005).

## II.    DISCUSSION

Article 4A of the New York Uniform Commercial Code governs electronic funds transfers, commonly known as wholesale wire transfers.  N.Y. UCC § 4-A-102 & cmt.  Funds transfers are "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order" and are completed "by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.* § 4-A-104. A payment order is "an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay . . . a fixed or determinable amount of money to a beneficiary [where] the receiving bank is to be reimbursed by debiting an account of . . . the sender." *Id.* § 4-A-103.  The "sender" is "the person giving instruction to the receiving bank."  The "receiving bank" is "the bank to which the sender's instruction is addressed." *Id.*  The "beneficiary" is "the person to be paid by the beneficiary's bank" and the beneficiary's bank is "the bank identified in a payment order in which an

---

[2]  On May 15, 2008, Covina and George Brothers voluntarily dismissed Ng from the litigation pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

account of the beneficiary is to be credited pursuant to the order." *Id*. Under these definitions, the

Merrill Lynch wire transfers constitute electronic funds transfers governed by Article 4A.[3]

Sections 4-A-202, 4-A-203, and 4-A-204 of the N.Y. UCC govern liability for unauthorized

funds transfers. If a receiving bank accepts a payment order issued in its customer's name, and the

customer did not authorize the payment order, the bank is obligated to refund any payment made

pursuant to that payment order. *Id.* §§ 4-A-202, 203, 204. In other words, under the N.Y. UCC, banks

bear the risk of loss from unauthorized wire transfers (if certain conditions discussed below are met).

*See id.* However, Section 4-A-505 contains a one-year statute of repose[4] pursuant to which a bank is

not required to reimburse its customer for a wire transfer processed pursuant to an unauthorized

payment order if the bank's customer did not object within one year of receiving notice of the

account's debit:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection within one year after the notification was received by the customer.

---

[3] The definition of "bank" for Article 4A purposes encompasses Merrill Lynch. N.Y. UCC § 4-A-105 (defining "bank" as "a person engaged in the business of banking and includes a savings bank, savings and loan association, credit union, and trust company"); *see also Woods v. MONY Legacy Life Ins. Co.*, 641 N.E.2d 1070, 1072 (N.Y. 1994) (construing liberally the UCC's definition of "bank" to "promote the underlying purposes and policies of the UCC").

[4] Statutes of repose and statutes of limitations are often confused, though they are distinct. A statute of limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued, often subject to tolling principles. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998); *see also P. Stolz Family P'ship v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004). By contrast, a statute of repose *extinguishes* a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts. *See P. Stolz Family P'Ship*, 355 F.3d at 102-03.

*Id.* § 4-A-505; *see id.* cmt.

Section 4-A-505's text appears to bar Ma's claims: they are based on electronic funds transfers and he failed to notify Merrill Lynch of his objections within one year. Undeterred, Ma claims that his common law claims—all having limitations periods well in excess of one year—remain viable for three reasons. First, he contends that the transfers are "only incidental" to the common law claims, and, consequently, are not controlled by Article 4A. Second, though he concedes that "common law claims that are either inconsistent with Article 4-A or covered by its provisions are preempted," he maintains that his common law claims fall into neither category. He contends that, because Article 4A contains no direct reference to claims such as those for breach of fiduciary duty, conversion, or fraud, the Article, presumably, was not intended to reach them and, in any event, his common law claims do not impose liabilities inconsistent with the rights and liabilities created by Article 4A. Third, Ma contends that because the account statements he received did not identify the beneficiary of the funds transfers, they failed to comply with Section 4-A-505's limitation of its one-year period of repose to bank customers who received notification "reasonably identifying" the payment order at issue. We are not persuaded.

Prior to Article 4A's adoption by the New York State Legislature in 1990, "existing rules of law did not adequately address the problems presented by" the widespread use of electronic funds transfers. *Banque Worms v. BankAmer. Int'l*, 570 N.E.2d 189, 194 (N.Y. 1991). Article 4A was enacted to create a "comprehensive body of law" that "use[s] precise and detailed rules to assign responsibility." N.Y. UCC § 4-A-102 cmt.; *see Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102-03 (2d Cir. 1998).

7

The drafters made clear that Article 4A reflects "a deliberate decision . . . to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment." N.Y. UCC § 4-A-102 cmt. The statute of repose in N.Y. UCC Section 4-A-505 is one such "unique rule." *See id.* Prior to Article 4A's adoption, courts resolved disputes over funds transfers in part by "referring to general principles of common law or equity." *Id.* Article 4A rejected this piecemeal approach in favor of a more disciplined regime under which common law claims at odds with Article 4A are no longer permitted. Article 4A precludes customers from bringing common law claims inconsistent with the statute: "[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities *inconsistent* with those stated in this Article." *Id.* (emphasis added); *see also Grain Traders*, 160 F.3d at 102-03.

Not all common law claims are per se inconsistent with this regime. *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1275-76 (11th Cir. 2003); *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 951 F. Supp. 403, 407-09 (S.D.N.Y. 1995); *Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265, 268-69 (S.D.N.Y. 2006). Practically speaking, Article 4A controls how electronic funds transfers are conducted and specifies certain rights and duties related to the execution of such transactions. It calls for banks to adopt certain security procedures (§§ 4-A-201, 202), controls the timing for executing payments (§ 4-A-301), and assigns responsibility for reporting erroneous electronic debits (§§ 4-A-304, 505). Claims that, for example, are not about the mechanics of how a funds transfer was conducted may fall outside of this regime. Because Article 4A's statute of repose only applies to claims that are "inconsistent" with the Article, we do not believe that it was intended

to shield banks from all fraud claims—or other common law claims raised more than a year after an electronic transfer occurred. *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1276 (11th Cir. 2003) ("Interpreting Article 4A in a manner that would allow a beneficiary bank to accept funds when it knows or should know that they were fraudulently obtained, would allow banks to use Article 4A as a shield for fraudulent activity."). For Article 4A purposes, the critical inquiry is whether its provisions protect against the type of underlying injury or misconduct alleged in a claim.

Two of Article 4A's principal purposes are to protect against erroneous and unauthorized electronic funds transfers and to cabin banks' liability for unreported errors. *See* N.Y. UCC §§ 4-A-303, 304, 305, 505. Ma's various claims concern alleged misconduct by Merrill Lynch with respect to its execution of electronic transfers. For instance, Ma alleges that "Defendants . . . breached their fiduciary obligations by . . . failing to contact Plaintiffs about the transactions taking place in their account, and allowing funds to be removed from the accounts without proper authorization." Additionally, Ma alleges "Defendants [committed conversion by] wrongfully and without authorization exercis[ing] dominion and control over [Plaintiffs'] property by taking it out of Plaintiffs' accounts and giving it to a third party, to the exclusion of Plaintiffs' rights of possession." Importantly, Ma does not allege, for example, that he authorized the electronic funds transfers in reliance on promises concerning returns on his investments, or that the funds transfers he approved were secretly misdirected. Nor, for that matter, does he allege that the bank violated the federal securities laws by inducing him to transfer funds. *See, e.g.*, Employment of Manipulative and Deceptive Devices (Rule 10b-5), 17 C.F.R. § 240.10b-5 (prohibiting, among other things, "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

9

in connection with the purchase or sale of any security"); *see also* Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Rather, he claims that the funds transfers were altogether unauthorized. Since all of Ma's claims are, at their core, assertions that he did not order or approve any of the disputed electronic transfers of funds from his accounts, we are bound to recognize the rights and duties New York law provides for precisely these circumstances. *See* N.Y. UCC § 4-A-102 cmt. As a result, resort to Article 4A and its statute of repose is unavoidable.

We recognize that a number of Ma's claims, such as his claim for breach of fiduciary duty, have six-year limitations periods. But we have little difficulty concluding that when a legislature imposes a one-year statute of repose on claims alleging injury by an unauthorized electronic transfer, permitting the customer to bring common law claims within a longer limitations period is inconsistent with the legislature's intent. *See Id.* § 4-A-505 cmt. The fact that Article 4A does not expressly refer to common law claims such as fraud or breach of fiduciary duty is not dispositive. Article 4A's text strongly suggests that it applies to claims asserting the existence of unauthorized wire transfers regardless of what the claims may be called and, in any event, the accompanying commentary is pellucid on the issue. *See id.*

*ReAmerica*, *S.A. v. Wells Fargo Bank International*, 577 F.3d 102, 106-07 (2d Cir. 2009), is instructive. There, ReAmerica, a reinsurance company, opened an account with Wells Fargo's predecessor-in-interest. Minnesota law, which includes Article 4A of the UCC, governed the parties' wire transfer agreement. *Id.* at 104-05; *see* Minnesota Statute § 336.4A-505 (providing a one-year statute of repose for disputed funds transfers). A ReAmerica consultant forged the signature of ReAmerica's chief executive officer on numerous payment orders in order to divert ReAmerica's funds

10

to a personal account. *ReAm.*, 577 F.3d at 104. Nearly two years after Wells Fargo transmitted the funds to the account, ReAmerica notified Wells Fargo that it was disputing the forged payment orders. Wells Fargo declined to refund ReAmerica for the transactions, citing the one-year period of repose specified in Minnesota Statute Section 336.4A-505.

We interpreted Minnesota Statute Section 336.4A-505, which is identical to N.Y. UCC Section 4-A-404, to time-bar Re-America's common law negligence claim, which had a six-year statute of limitations. We reasoned that permitting ReAmerica's negligence claim to proceed despite the expiration of Section 336.4A-505's one-year period of repose would "impose liability inconsistent with the liabilities created by Article 4A," *id.* at 106, and therefore concluded that ReAmerica was barred from raising its negligence claim nearly two years after the date its alleged injury occurred, *id.* at 107.

Ma further contends that the account statements he received were inadequate to alert him to the fraud he alleges. Section 4-A-505's one-year period of repose applies only where "a payment order [has been] issued in the name of the customer as sender and accepted by the bank, and the customer received notification *reasonably identifying* the order." N.Y. UCC § 4-A-505 (emphasis added). Pointing out that a payment order is defined as "an instruction of a sender . . . to pay . . . a fixed or determinable amount of money to a beneficiary," *id.* § 4-A-103, Ma contends that in order for any notice to "reasonably identify" a particular payment order, that notice must, in addition to identifying the amount transferred, also identify the beneficiary of the transfer, something Merrill Lynch's statements failed to do. Ma contends that "[unless] a customer knows the beneficiary of a particular

11

payment order . . . a bank customer is not in a position to ascertain whether the payment order was authorized."

The UCC's drafters declined to define the term "reasonably identify" and we have not done so. Thus, the District Court turned for guidance to Sections 9-108 and 9-504 of the N.Y. UCC, which relate to secured transactions.[5] Under these sections, collateral is reasonably identified if it is "objectively determinable." *Id.* § 9-108. The District Court was correct to use this objective standard and we agree with its conclusion that the account statements reasonably identified the payment orders underlying the wire transfers at issue. Each of the monthly statements provided the dollar amount of the transfer, the date of the transfer, the total dollar amount transferred out of the account for that month, the account's total value at the end of that month, and the total dollar amount transferred out of the account for the year-to-date. In addition, Merrill Lynch assigned a unique identification number to every wire transfer listed on the statements.

Since Ma alleges that he did not authorize any of the funds transfers in dispute, we easily conclude that Ma had information sufficient to timely object were he so inclined:[6] If Ma had reviewed the statements, he would have discovered that at least $9 million had been transferred out of the accounts through numerous wire transfers that he now contends he did not authorize. A cursory review

---

[5] Section 9-108 states "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described." N.Y. UCC § 9-108 (a). Section 9-108 goes on the state that reasonable identification occurs when the identity of the collateral is "objectively determinable." *Id.*(b)(6). Section 9-504 states that a financing statement "sufficiently indicates the collateral that it covers" if it provides a "description of the collateral pursuant to Section 9-108."

[6] Ma's appeal does not require us to reach the question of whether the account statements would provide sufficient notice under N.Y. UCC Section 4-A-505 where a bank customer authorized funds transfers for the benefit of a particular third party, but alleges that the bank fraudulently transferred the funds to a third party different from the one specified on the customer's payment order.

of the statements would have alerted Ma to the fact that the accounts' balances had fallen sharply as a result of these numerous, allegedly unauthorized wire transfers, regardless of Ng's verbal assurances to the contrary. That was all the information he needed to object. *See id.* § 9-108 cmt. ("The test of sufficiency of a description under this section . . . is that the description do the job assigned to it: make possible the identification of the collateral described."). Since, according to Ma, he did not authorize any funds transfers, including additional information in the account statements, such as the beneficiaries, would not have assisted him. In any event, as we have seen, Ma concedes that he never reviewed any of the statements until years after Merrill Lynch mailed them to him.

Section 4-A-505's statute of repose only applies where a bank has provided its customer with actual notice of the payment order underlying the wire transfer at issue. *Regatos v. N. Fork Bank*, 838 N.E.2d 29, 633-34 (N.Y. 2005) (finding Section 4-A-505 unsatisfied by an "inquiry" notice system whereby a bank made its customer's monthly account statements available for review but "waited for him to request them rather than send them to him"). Ma contends that he did not receive actual notice because Merrill Lynch did not provide him with "actual knowledge" that Ng was making unauthorized funds transfers out of the accounts to various third parties and because he did not receive all of the statements sent during the relevant time period.

Ma confuses actual knowledge with actual notice. Article 4A contains a notice, not a knowledge, requirement: It requires banks that wish to avail themselves of Section 4-A-505's period of repose to provide their customers with actual notice of payment orders processed from their accounts. *See id*. at 400-01 (defining Section 4-A-505's notice requirement as actual notice). Since a bank customer is in a far better position than a bank to identify unauthorized transfers, Article 4A's

13

drafters quite sensibly did not impose on financial institutions the type of far-reaching investigation and disclosure requirements Ma would prefer. *Cf. ReAm.*, 577 F.3d at 106-07; *Grain Traders*, 160 F.3d at 102-04. In any event, the notice Merrill Lynch provided to Ma was sufficient to alert him to the funds transfers he now contends are fraudulent.

Finally, for purposes of resolving this appeal, we are required to assume that Ma received the statements. As the District Court correctly determined, a presumption of receipt arises where, as here, the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed. *Nassau Ins. Co. v. Murray*, 386 N.E.2d 1085, 108 (N.Y. 1978); *see also Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985). To rebut this presumption, a litigant must show that "routine office practice was not followed or was so careless that it would be unreasonable to assume that notice was mailed." *Nassau Ins. Co.*, 386 N.E.2d at 1086. Mere denial of receipt is insufficient to rebut the presumption. *See Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004). Merrill Lynch benefits from this presumption and it is unrebutted. The record indicates that the account statements were mailed from a central Merrill Lynch facility in Piscataway, New Jersey, over which account representatives, such as Ng, had no control. More importantly, the record shows that Ma received account statements that, if he had opened and examined, would have disclosed funds transfers he now claims to have been unauthorized but that, for whatever reason, he chose to ignore**.**

III. CONCLUSION

The judgment of the District Court is **AFFIRMED**.