18-382-cv
Schoninger v. Green

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of February, two thousand nineteen.

PRESENT:  GUIDO CALABRESI,
    CHRISTOPHER F. DRONEY,
        *Circuit Judges*,
    STEFAN R. UNDERHILL,
        *Chief District Judge*.*

-----------------------------------------------------------------------

RICHARD SCHONINGER,

*Plaintiff-Appellant*,

v.                                                      No. 18-382-cv

JAMES GREEN, WILLIAM WILKISON,

*Defendants-Appellees*.**

-----------------------------------------------------------------------

---

* Chief Judge Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

** The Clerk of Court is respectfully requested to amend the official caption as set forth above.

FOR PLAINTIFF-APPELLANT:                    PHILIP M. SMITH, Kravit Smith LLP,
                                            New York, New York, and John P.
                                            Napoli, Seyferth Shaw LLP, New York
                                            New York.

FOR DEFENDANTS-APPELLEES:                   MICHAEL D. MARGULIES (Robert
                                            Novack, *on the brief*), Carlton Fields
                                            Jorden Burt, P.A., New York, New
                                            York.

Appeal from a February 6, 2018 judgment of the United States District Court for the Southern District of New York (Crotty, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-Appellant Richard Schoninger appeals from the judgment of the United States District Court for the Southern District of New York, granting summary judgment in favor of Defendants-Appellees James Green and William Wilkison. We assume the parties' familiarity with the underlying facts, the record of the prior proceedings, and the issues on appeal.

This action arises out of Schoninger's[1] $1 million investment in March 2014 in Islet Sciences, Inc. ("Islet"), a public biotechnological company in which he had previously invested $350,000. Schoninger alleges that Green and Wilkison, who were executive officers at Islet, orally agreed that, in exchange for Schoninger's additional investment, they would cause Islet to merge with Brighthaven Ventures, LLC ("BHV"), a company separately held by Green and Wilkison that owned rights to the development of "Remo," a pharmaceutical product to treat type 2 diabetes. The merger did not occur. Schoninger then filed this action, asserting claims for common law fraud, unjust enrichment, and breach of contract.

On February 24, 2016, the district court dismissed Schoninger's common law fraud and unjust enrichment claims. On February 5, 2018, the district court granted summary

---

[1] Portions of Schoninger's investment were transferred to his children, Plaintiffs Scott and Jacqueline Schoninger. Plaintiff Gerald Allen also invested on the advice of Schoninger. These three Plaintiffs are not parties to this appeal.

2

judgment to Green and Wilkison on Schoninger's breach of contract claim. This appeal followed.[2]

We review a district court's grant of summary judgment *de novo*. *Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 212 (2d Cir. 2018). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007) (internal quotation marks and citation omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to establish a genuine dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Guilbert*, 480 F.3d at 145 ("[M]ere speculation and conjecture is insufficient to preclude the granting of the motion.") (internal quotation marks and citations omitted).

Having reviewed the record *de novo*, we agree with the district court's conclusion that there are no genuine disputes of material fact that could support Schoninger's breach of contract claim.

## I.     Background

According to Schoninger's deposition testimony and sworn declaration, the parties first met on February 11, 2014 to discuss a private offering of stock that Islet was planning. During that meeting, Green and Wilkison stated that the terms of a merger between Islet and BHV had been negotiated and that they were ready to announce the merger in "a couple weeks." App'x at 227. Schoninger claims that Green represented that there would be no impediment to the merger because he and Wilkison were both managers of Islet and owners of BHV. Schoninger then offered at the end of the meeting to invest $1 million in Islet, but Green and Wilkison did not accept the offer at that time.

On February 25, 2014, also according to Schoninger, he asked Islet's investment banker, Edward Gibstein of COVA Capital Partners, LLC, to arrange another meeting with Green and Wilkison, but Gibstein did not do so, explaining that Green and Wilkison were too busy. Three days later, on February 28, 2014, Schoninger told Gibstein that he would

---

[2]     Schoninger does not appeal the dismissal of his claims for common law fraud and unjust enrichment.

invest only $250,000 in an attempt to encourage Green and Wilkison to meet with him again to obtain the $1 million he had initially offered. Schoninger also told Gibstein at that time that he was concerned that Green would change his mind about the merger, and Gibstein told Schoninger that Green would not change his mind.

On March 3, 2014, Gibstein left Green a voicemail stating that Schoninger was going to invest either $250,000 or $300,000 that week. Schoninger claims that, that same day, Schoninger had a telephone conference with Green and Wilkison, during which Green stated that the merger "was going to happen '100%'" and that the merger would be announced late that week or early the next week. App'x at 230. According to Schoninger, the terms of the merger had not changed from what the parties discussed on February 11, 2014.

Three days later, on March 6, 2014, Gibstein left Green a voicemail stating that Schoninger was going to invest $500,000 and that Schoninger was coming to Gibstein's office that day to sign "the paperwork." App'x at 40. Schoninger did not make an investment that day, however.

Schoninger informed Gibstein sometime before March 10, 2014 that he had decided to invest $1 million, and he met with Gibstein at Gibstein's office that day to document the investment. According to Schoninger, the parties' only communications on March 10 consisted of the following: Schoninger told Green and Wilkison on a conference call that he intended to invest $1 million in Islet, and Green and Wilkison responded by "thank[ing] [him] for [his] investment and counsel." App'x at 231. The parties "then discussed [Schoninger's] recommendation that they hold an investor conference call following the announcement of the merger," *id.*, as well as the contents of a draft press release that described the basic terms of the merger. According to Schoninger's declaration, during the course of that conversation, "[n]either Green nor Wilkison indicated that any of the terms of the merger had changed." *Id.*

After the conference call ended, Schoninger purchased 3.2 million Islet shares and 1.6 million Islet warrants, in exchange for $800,000, and he signed a subscription agreement with Islet the same day.[3] Schoninger also purchased $200,000 in Islet stock from Sand Dollar Partners, LLC, which relieved, in part, a litigation settlement obligation owed by Islet to Sand Dollar Partners. Green, acting on behalf of Islet, approved both investments. It is undisputed that there is no written agreement between the parties

---

[3] The subscription agreement between Schoninger and Islet contains an integration clause providing that the subscription agreement "supersede[s] all prior agreements and understandings" between Schoninger and Islet. App'x at 57.

4

memorializing that Schoninger's investments were based on a promise by the Defendants to effect a merger of Islet and BHV.

In September 2014, Islet and BHV entered into a merger agreement on terms approved by the Islet Board, but the merger was terminated in early 2015. On March 3, 2015, Islet and BHV instead entered into a license agreement for the rights to Remo. Schoninger brought this action on March 24, 2015, on the basis of diversity jurisdiction.

## II. Discussion

Under New York law,[4] the elements of a breach of contract claim are: (1) an agreement; (2) performance by the plaintiff; (3) breach by the other party; and (4) damages suffered as a result of the breach. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). "[W]hether a binding agreement exists is a legal issue, not a factual one." *Vacold LLC v. Cerami*, 545 F.3d 114, 123 (2d Cir. 2008) (citations omitted). Accordingly, summary judgment is appropriate where, as here, "the evidentiary foundation for determining the formation of the parties' contract is [] undisputed," and the only dispute concerns "the legal significance of [the] facts."[5] *Id.* (internal quotation marks and citations omitted).

Schoninger's theory of contract formation is that (1) on February 11, 2014, the parties agreed to all of the material terms of an agreement to merge Islet and BHV in exchange for Schoninger's investment, except for one term: the amount of Schoninger's investment; and (2) by March 10, 2014, the parties had entered into an oral agreement incorporating those terms. We hold that no such agreement was ever formed.

For a contract to exist, there must be mutual assent to be bound, and "a party cannot be held to have contracted if there was no assent or acceptance." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation marks and citations omitted). Assent need not be written and "may be by word, act, or conduct which evinces the intention of the parties to contract." *Id.* (internal quotation marks and citations omitted) (emphasis removed). Assent must, however, be "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms," so that "the judiciary can give teeth to the parties' mutually agreed terms[.]" *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999).

---

[4]    The parties agree that New York law applies.

[5]    For the purposes of this appeal, Green and Wilkison do not dispute Schoninger's account of their communications.

Moreover, under well-settled New York law, "the existence of a binding contract is not dependent on the subjective intent of either [party]." *Brown Bros. Elec. Contractors v. Beam Const. Corp.*, 361 N.E.2d 999, 1001 (N.Y. 1977). Rather, it depends upon "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds." *Id.*

Here, nothing in the parties' March 10 communications (or before then) objectively manifests Green and Wilkison's assent to bind themselves to causing the merger in exchange for Schoninger's investment. When Schoninger told Green and Wilkison that he intended to invest $1 million, they only "thanked [Schoninger] for his investment and counsel." App'x at 231. And although Green and Wilkison went on to discuss the contents of a draft press release that described the merger, they did not represent their intent to bind themselves to effectuating the merger. Nor does Green's March 3 statement that the merger was "going to happen '100%,'" App'x at 230, constitute objective evidence of Green and Wilkison's assent to bind themselves to merging the companies in exchange for Schoninger's investment. That statement, as the district court observed, is in the character of a business projection rather than a binding promise. *See Schoninger v. Green*, No. 15 CIV. 2233 (PAC), 2018 WL 722838, at *4 (S.D.N.Y. Feb. 5, 2018). Likewise, Green's approval of Schoninger's investment does not demonstrate Green or Wilkison's intent to be so bound, as Green was acting on behalf of Islet, and none of Schoninger's funds were sent directly to Green or Wilkison. In sum, Green and Wilkison's "words and deeds" on or before March 10 are insufficient to establish a binding contract.

Schoninger has posited an alternative theory of contract formation, arguing that "he accepted [an] offer to him to participate in the merged companies by transferring his funds as [Green and Wilkison] desired." Appellant's Br. at 48. But that claim is also untenable given Schoninger's repeated, unequivocal testimony that it was he who made the offer on February 11, 2014. *See, e.g.,* App'x at 155 ("I made an offer. Mr. Green acknowledged it. He did not say yes.").

*       *       *

For the foregoing reasons, and finding no merit in Schoninger's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6